# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
Apr 18 2023
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ carolinalopez    DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.   23-mj-08250-LR
)
Black iPhone )
With no other identifying numbers or features )
Seized as FP&F No. 2023250700005501-0006 )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the    SOUTHERN    District of    CALIFORNIA    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960 and 963 | Importation of a Controlled Substance |

The application is based on these facts:
See Attached Affidavit of Homeland Security Investigations Special Agent Richard Horrocks incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

RICHARD D HORROCKS   Digitally signed by RICHARD D HORROCKS
Date: 2023.04.17 09:49:32 -07'00'
_____
Applicant's signature

Special Agent Richard Horrocks, HSI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone   *(specify reliable electronic means)*.

Date:    04/17/2023   
_____
Judge's signature

City and state:    El Centro, California       HON. LUPE RODRIGUEZ, JR., US MAGISTRATE JUDGE
_____
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

>Black iPhone
>
>With no other identifying numbers or features
>
>Seized as FP&F No. 2023250700005501-0006
>
>("Target Device")

The Target Device is currently in the custody of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (ASAC Calexico), located at 2051 North Waterman Avenue Suite 100, El Centro, California 92243.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 10, 2023, up to and including March 10, 2023:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl, methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# AFFIDAVIT

I, Special Agent Richard Horrocks, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

>  Black iPhone
>
>  With no other identifying numbers or features
>
>  Seized as FP&F No. 2023250700005501-0006
>
>  ("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Edson MEDINA Magana ("Defendant") for importing approximately 34.4 kilograms of fentanyl and 109.8 kilograms of methamphetamine from Mexico into the United States. The Target Device is currently in the custody of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (ASAC Calexico), located at 2051 North Waterman Avenue Suite 100, El Centro, California 92243.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since 2020. I am currently assigned to the HSI Office of the Assistant Special Agent in Charge, in El Centro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles that enter the United States at Ports of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual ("the driver") responsible for driving the vehicle containing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the driver regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the driver to remotely monitor the progress of the narcotics, provide instructions to the driver and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the driver to provide further instructions regarding the transportation of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats

and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On March 9, 2023, Edson MEDINA-Magana (MEDINA), a citizen of Mexico, presented himself for entry into the United States at the Calexico, California East Port of Entry vehicle lanes as the driver of a 2016 Nissan Pathfinder bearing Mexican license plates. Primary Customs and Border Protection Officer (CBPO) Nabity referred MEDINA to secondary inspection due to a system generated alert.

3

8. Z-Portal CBPO Duran scanned the Nissan and noticed anomalies in the roof and rear quarter panels. Canine Enforcement Officer (CEO) Aguilar searched the Nissan with his Human and Narcotics Detection Dog (HNDD) and received an alert to the rear driver's side door.

9. Upon further inspection, CBPO Lemus discovered a total of 176 packages weighing 142.2 kilograms (313.49 pounds) concealed within the Nissan. CBPO Garcia selected a package at random and tested the substance utilizing the GEMINI analyzer as witnessed by CBPO Lemus. The substance tested positive for the properties of methamphetamine. CBPO Garcia selected another package at random and tested the substance utilizing a Fentanyl Rapid Response test as witnessed by CBPO Garcia. The substance tested positive for the properties of fentanyl.

10. A total of 73 packages weighing 34.40 kilograms (75.84 pounds) were found to contain fentanyl. A total of 103 packages weighing 109.80 kilograms (242.07 pounds) were found to contain methamphetamine.

11. MEDINA was placed under arrest at 8:10 p.m. and advised of his rights per Miranda. MEDINA acknowledged his rights and agreed to answer questions without the presence of an attorney. MEDINA stated he thought he was transporting currency from Mexico into the United States for a firearms trafficking organization and a separate narcotics trafficking organization. MEDINA stated he was paid $900 USD per trip. MEDINA additionally stated that he was threatened by these organizations so that he would transport currency.

12. MEDINA was placed under arrest and charged with a violation of Title 21, United States Code, sections 952 and 960, for importation of a Controlled Substance, and was booked into the GEO-El Centro Detention Facility to await initial appearance.

13. The Target Device was located by CBPOs in MEDINA's possession and was seized at the time of arrest. During the interview, MEDINA was shown the Target Device and identified the Target Device as belonging to him.

14. Based upon my experience and training, consultation with other law

enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device.  In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States.  Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on February 10, 2023, up to and including March 10, 2023, the day after Defendant's arrest.

## METHODOLOGY

15. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive

equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

18. At the time of Defendant's entry into the United States, law enforcement officers conducted a manual review of the Target Device. I have not included any information obtained from that manual review in this affidavit and submit that probable cause exists to search the Target Device without that information.

//
//
//
//
//

6

# CONCLUSION

19. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

RICHARD D HORROCKS
Digitally signed by RICHARD D HORROCKS
Date: 2023.04.17 09:51:57 -07'00'

Special Agent Richard Horrocks
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 17th day of April, 2023.

8:57 p.m.

HON. LUPE RODRIGUEZ, JR.
U. S. MAGISTRATE JUDGE

7

## **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black iPhone
>
> With no other identifying numbers or features
>
> Seized as FP&F No. 2023250700005501-0006
>
> ("Target Device")

The Target Device is currently in the custody of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (ASAC Calexico), located at 2051 North Waterman Avenue Suite 100, El Centro, California 92243.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 10, 2023, up to and including March 10, 2023:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl, methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.